**PHILIP J. TRENCHAK, ESQ.**
Nevada State Bar No. 009924
**VICTORIA C. MULLINS, ESQ.**
Nevada State Bar No. 13546
**Mullins & Trenchak, Attorneys at Law**
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH MAQUADE CHESLEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MESQUITE, a government entity,<br>AARON BAKER, an individual,<br>BARBARA ELLESTAD, an individual,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**Causes of Action:**<br>1) **Discrimination based on religion and sex**<br>2) **Retaliation due to religion and sex**<br>3) **42 U.S. Code § 1983**<br>4) **Defamation**<br>5) **I.I.E.D./N.I.E.D.** |

## COMPLAINT

Plaintiff, MAQUADE CHESLEY (hereinafter "Plaintiff") by and through his attorney

PHILIP J. TRENCHAK, Esq., of Mullins and Trenchak, Attorneys at Law, hereby brings suit against

CITY OF MESQUITE (hereinafter "MESQUITE"), AARON BAKER (hereinafter "CITY

MANAGER"), and BARBARA ELLESTAD (hereinafter "BARBARA ELLESTAD") and avers and

alleges as follows:

## JURISDICTION

1.      This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §2000e to 2000e-17 (retaliation), Retaliation, 42 U.S. Code § 1983, and state causes of

1

action.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a)(4)(civil rights action) and 42 U.S.C. §2000e-5(f)(3)(unlawful discrimination and retaliation in employment). This Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. All material allegations relative to the named defendants contained in this Complaint are believed to have occurred in the State of Nevada, Clark County. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

**EXHAUSTION OF ADMINISTRATIVE REMEDY**

4. Plaintiff initiated the process of filing a Charge of Discrimination against his former employer, the Defendant named in this action, with the United States Equal Opportunity Commission ("EEOC") wherein he alleged discrimination on the basis of sex, religion, retaliation, and retaliation as a continuing action. This was done within 300 days of the incident giving rise to this complaint.

5. Thereafter, Plaintiff's attorney received 's Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission. Please see attached Exhibit A.

6. This action is filed within 90 days of the "Right to Sue" Letters being received by Plaintiff. Therefore, this action is timely.

7. Plaintiff exhausted his administrative remedy on all claims pled hereunder prior to filing this action with this Court.

**PARTIES**

8. Plaintiff is, and was at all times material to this action, an individual, residing in the State of Nevada, employed by Defendant.

9. Plaintiff is informed and believes, and thereupon alleges, that Defendant is and was at all times material to this action, CITY OF MESQUITE (hereinafter "MESQUITE"), a division of the State of Nevada.

10. Plaintiff is informed and believes, and thereupon alleges, that Defendant is and was at all

times material to this action, AARON BAKER (hereinafter "CITY MANAGER"), an employee employed by the City of Mesquite.

11.     Plaintiff is informed and believes, and thereupon alleges, that Defendant is and was at all times material to this action, BARBARA ELLESTAD (hereinafter "BARBARA ELLESTAD"), an individual residing in the state of Nevada and running a publication known as the "Mesquite Citizens Journal."

## GENERAL ALLEGATIONS

12.     Plaintiff is informed and believes, and thereupon alleges, that MAQUADE CHESLEY, Plaintiff, entered into employment with Defendant on June 18, 2007.

13.     On or about February of 2019, MaQuade was promoted to the position of Chief of Police for the township of Mesquite.

14.     The City Attorney of Mesquite, during that time period, began a systematic and continuous onslaught of personal attacks which included publishing false information about Plaintiff to Plaintiff's co-workers as well as to citizens of the City of Mesquite.

15.     During Plaintiff's swearing in ceremony in February 2019, the City Attorney sent the following text messages to Officers under MaQuade's command: "*Kiss ass (kiss emoji peach emoji)*" and "*Were you guys threatened with your jobs? I don't think I've ever seen a turnout like this for an appointment (lol emoji lol emoji).*"

16.     Plaintiff was of the same religion as the City Attorney, and attended the same church.

17.     TheCity Attorney began spreading rumors at Plaintiff's place of worship as well as to the residents of the City of Mesquite.

18.     The City Attorney created a dangerous condition by denigrating the reputation of the Chief of Police and therefore the entire police department.

19.     MaQuade's wife and his three (3) daughters were forced to leave the town of Mesquite

3

because of the extremely vulgar and sexually explicit nature of the lies that the City Attorney spread to fellow church members and citizens of the town of Mesquite while working in his capacity as the Mesquite City Attorney.

20.     The City Attorney spread rumors to citizens of Mesquite and members of MaQuade's church that included the following, but is not exhaustive of all statements dispersed by the former City Attorney:

- MaQuade Chesley had an affair with an underage female.

- MaQuade impregnated a local adult female.

- MaQuade stole money from a business named "Splash Pad."

- MaQuade approved $40-50,000 in overtime to compensate a police sergeant. for creating campaign videos for the Mayor of Mesquite.

- MaQuade sent and received nude photos to an underage female.

- MaQuade performed sex acts in the stock room with an underage female.

21.     The City Attorney  knew that all of the above statements, and others he made are false, defamatory, and likely to cause significant harm to Plaintiff, Plaintiff's family and the Police Department in general.

22.     The City Manager was put on notice that the following issues took place during Union negotiations:

- Police Department Administration has always been invited to this particular Union's negotiations. MaQuade Chesley was excluded from negotiations by the City Attorney.

- The City Attorney lied during negotiations wherein he informed the Union that he contacted Chief Chesley for input and MaQuade Chesley declined to attend.

- The City Attorney sent an email that was derogatory and demanding to MaQuade Chesley.

4

- The City Attorney called Chief Chesley and proceeded to yell and use profanity. Chief Chesley told the City Attorney that if "He can't have a civil conversation [Chief Chesley] will end the phone call." The City Attorney continued to yell and use profanity so Chief Chesley hung up the phone.

- The City Attorney met with the city council and gave them false information in reference to these Union negotiations and police procedures, in an attempt to show police incompetence. The City Attorney continuously undermined the Police Department's authority.

23.     In February of 2019, the City Manager spread a vicious rumor concerning personnel under MaQuade's command which he admitted to and apologized to MaQuade for spreading it.

24.     The City Attorney spun hideous false rumors at a feverish and manic pace about MaQuade.

25.     In turn, the City Manager's opinion of MaQuade was sullied.

26.     In response to this, the City Manager began to exclude MaQuade from meetings which had previously always included the Chief of Police.

27.     MaQuade met with the City Manager in September of 2019 to discuss the multitude of rumors that the City Attorney told the City Manager.

28.     During that meeting, the City Manager of Mesquite made harsh accusations that implied that he believed the rumors of sexual misconduct that the City Attorney actively spread.

29.     During said meeting, the City Manager asked uncomfortable questions without regard to giving MaQuade notice as to the seriousness of the allegations levied.

30.     MaQuade was deeply affected by the vicious and false claims that have directly harmed MaQuade's reputation, and that caused his family to leave Mesquite.

31.     The City Attorney's false claims affected MaQuade Chesley's professional and business reputation.

5

32.     The rumors that the City Attorney spread caused MaQuade's wife and three (3) daughters to move out of the family home to a town forty (40) miles away.

33.     The vicious rumors were of a sexual nature and included accusations that directly imputed MaQuade's professional reputation in a detrimental fashion.

34.     MaQuade's reputation at his place of worship was destroyed as well.

35.     MaQuade continuously reported the continuous, ongoing disinformation campaign that was being waged against him to the City Manager, but the City Manager refused to take any action to rectify the behavior.

36.     The City Manager informed MaQuade that the City Attorney was tracking MaQuade's calls at all times.

37.     MaQuade requested that the City Manager do whatever was in his power to reconcile the issues between MaQuade and the City Manager but the City Manager refused, and effectively did nothing to assist MaQuade, and to protect his family.

38.     The City Manager informed MaQuade that the City Attorney "Hates [MaQuade] and will not reconcile."

39.     The City Manager insisted that he had no authority over the City Attorney and that the City Attorney is "his friend."

40.     Additionally, during the meeting of September 2019, MaQuade implored the City Manager for assistance because the Mesquite City Attorney's actions had ruined his life.

41.     MaQuade stated that he had to maintain two (2) homes forty (40) miles apart and that he was therefore unable to live with his wife and three (3) daughters.

42.     During this meeting, MaQuade informed the City Manager that the false and vicious rumors of a sexual nature had caused MaQuade substantial marital problems.

43.     During said meeting in September of 2019, MaQuade emotionally asked for help in

protecting his family.

44.      During this meeting, the City Manager maintained that he was incapable of offering any assistance whatsoever.

45.      Following this meeting with the City Manager, MaQuade informed the City Manager of ongoing rumors that were being spread directly from the mouth and cell phone of the City Attorney representing the City of Mesquite.

46.      Each and every time MaQuade went to the City Manager to report these incidents, the City Manager refused to lend any assistance whatsoever.

47.      The City Manager never informed the City Council of the ongoing harassment that was of a sexual nature which was the proper protocol which should have been followed by the City Manager.

48.      MaQuade requested that the City Manager inform the City Council of Mesquite of the ongoing sexual harassment, but the City Manager continued to refuse to take any actions to stop the offensive behavior.

49.      Between 2019 and 2020, the City Manager did nothing to stop the continuous onslaught of harassment that was of a sexual nature from the City Attorney of the City of Mesquite.

50.      In March of 2020, the City Attorney made false allegations to the City Manager accusing MaQuade of restricting the City Attorney's access to police records.

51.      In June of 2020, the City Attorney made public accusations to the City Council that the "Black Lives Matter" protests were not being handled properly by the Chief of Police.

52.      MaQuade filed a harassment complaint against the City Manager for his lack of action to dissuade the deleterious and horrific actions of the City Attorney directed toward MaQuade.

53.      Upon information and belief, in approximately September of 2020, two (2) officers made claims of harassment that were found to be legitimate against the City Attorney and disciplinary action was recommended, it is not unknown whether any disciplinary action was taken against the City Attorney

despite the recommendation to do so.

54.     The City Manager was effectively "on notice" that the City Attorney was a legitimate threat to co-workers as well as to the police force.

55.     Upon information and belief, the City Manager was made aware in approximately September of 2020 that an employee of the city of Mesquite was openly referring to MaQuade as "Chief Pedophile."

56.     In November of 2020, an investigation was begun, and in December of 2020, the City Attorney was removed from his position due to the findings of the investigation.

57.     The City Attorney was thereafter allowed to address the City Council to publicly blame his removal on MaQuade.

58.      In March of 2021 an EEOC Charge was filed on behalf of MaQuade and a settlement demand was also sent on Plaintiff's behalf around that same time.

59.     On April 27, 2021, The City Manager wrote the following email to MaQuade:

> Yesterday afternoon, Barbara Ellestad told me that she is planning on running an article today that states that you are being investigated by the Attorney General's office.  Apparently, the allegations stem from things that allegedly happened between 2015 and 2019 involving minor females.
>
> I do need to make you aware that several weeks ago, an individual came forward alleging that they had firsthand knowledge of these incidents involving you.  As mandatory reporters and due to the conflict with the city not being able to invest anything like this internally, Adam and I directed this person to the AG's office.  I imagine that there is a connection between that person reporting that to the AG and Barbara publishing this article.
>
> I realize that this is not welcome news, but I would rather you learn about it from me than from reading it on some website.

60.     MaQuade responded as follows:

Barb contacted you yesterday and you waited until today to tell me? Waited to give me and my attorney as little time as possible to stop this article from coming out and ruining my life, my career, and my reputation all over false allegations.

When you took this complaint did you have the person fill out a complaint form and sign it? Thus holding them accountable for the false allegation? My bet is you didn't. You couldn't even get something as simple as that correct. You wanted this to be true so bad that you failed to do your due diligence and think about the repercussions of a false allegation.

NRS 199 section 1 "A person who makes knowingly files a false or fraudulent written complaint or allegation of misconduct against a peace officer for conduct is guilty of a misdemeanor."

In this email you say you directed them to talk to the AG. Did you call or contact the AG as you stated you are a mandatory reporter? There is no such thing as a mandatory reporter of rumors. Rumors that will ruin my career, life, and reputation for the rest of history. I think about my girls google searching my name in a few years and finding an article that says I'm being investigated by the AG. I'm certain because of my position an article like this will be picked up by the review journal and major news stations. The repercussions of this will be forever part of my legacy. No matter what reparations are made through lawsuits, my reputation will never be restored.

Again you have failed me as your employee and further perpetrated harm against me. This is clear retaliation of which you are directly involved. Thus furthering my necessity to move forward with the lawsuit.

61.     Said article written by Barbara Ellestad, and then published in the Mesquite Citizens' Journal, stated the following:

APRIL 27, 2021 BY BARB ELLESTAD 38 COMMENTS

Multiple sources have confirmed to the Mesquite Citizen Journal they have been interviewed by investigators associated with the Nevada State Attorney General's office regarding alleged inappropriate misconduct on the part of Mesquite Police Chief MaQuade Chesley.

The allegations date from 2015 to late 2019 and pertain to possible inappropriate and questionable texts, conversations, and pictures exchanged by Chesley with teenage girls between the ages of 16 and 19. One person interviewed by the MCJ said "at a minimum it was inappropriate and questionable. At a maximum, it was predatory on the part of Chesley. From what I know firsthand, I believe it was predatory."

9

Other than Chief Chesley's name, no other names will be revealed in this report because of possible repercussions towards the victims and others involved. The MCJ relies on multiple independent sources for information in this article.

"We have had an individual make claims regarding an employee," Mesquite City Manager Aaron Baker told the Mesquite Citizen Journal. "Due to a conflict, the city cannot investigate those matters. People who've made claims have been referred to the AG's office for the AG to look into the matter."

The Attorney General's office has not responded to requests for comment by the MCJ.

Messages and texts were allegedly exchanged between Chesley and the teenage girls via the social media platform known as Snapchat which automatically deletes transmissions after a certain time frame. That could explain why no documentation or copies of the transmissions are now available. According to sources the communications were allegedly sexual in nature on Chesley's part.

Chesley has denied any "inappropriate text messages to underage girls" in a text message to the MCJ.

The MCJ is aware of at least seven then-teenage girls who were either involved with or knew of Chesley's alleged behavior.

One other police officer, Zac Wood, has been confirmed by Chief Chesley as being under investigation for alleged sexual misconduct while on duty and in uniform. City officials have confirmed that Wood is being investigated about the alleged behavior and that the investigation has not been concluded but is ongoing. It appears the two cases are unrelated.

According to multiple sources interviewed by the MCJ, Chesley's alleged inappropriate behavior began as early as 2015 when Chesley was then a captain in the police department. The alleged behavior peaked in 2016 and 2017, tapering off after he was officially appointed as police chief in February 2019.

Formal complaints had not been lodged previously because the alleged victims and others who were made aware of the situation "feared repercussions because this guy was pretty high up in the police department and then he was made police chief."

It's also alleged by multiple sources to the MCJ that Chesley, when he was a captain prior to his appointment as Chief, accompanied several then-teenage girls and several then-high school football players to the private gymnasium located within the Mesquite Police Department headquarters building on Hardy Way for 'work-outs.' At the time, the official policy of the MPD was that no one other than official police department employees were

allowed to use the facility at any time regardless of whether they were accompanied by an employee. That exclusion included family members and friends.

In February the Mesquite City Council authorized an outside review of the MPD operations by an independent third party. It's not clear if any of the allegations made about Chesley's behavior will be part of that review. An allocation of $25,000 originally targeted towards a professional search for a new city attorney was put on hold in order to pay for the MPD review.

The city and Chesley can be liable for his alleged abuse of his position and office within the police department and for misusing city facilities should the allegations be proven about allowing non-police department employees to use the private department facilities.

62.     The City Manager stated the following during the City Council Meeting:

5:00 PM City Council Meeting

"Mr. Mayor I have a statement I'd like to read. I'd like to address an article that was published today in the Mesquite Citizens Journal about Police Chief MaQuade Chesley. In the article it is alleged that the Attorney General's Office is investigating past behavior of Chief Chesley. The accusations brought up by this article are very serious.
Several weeks ago an individual approached me and City Attorney [name omitted] claiming FIRST HAND knowledge about alleged inappropriate behavior by Chief Chesley. Due to the conflict with the City not being able to investigate anything like this internally, we directed this person to the appropriate party at the Nevada Attorney General's Office for them to report their allegations.
Since that individual was referred to the AG's office, the AG's office has not contacted the City of Mesquite regarding these allegations, or whether or not they are investigating these allegations. Whatever the AG's office decides to do in this matter, I have confidence in the process the AG's office will follow to properly handle this matter. Since these are only allegations and nothing has been substantiated at this point, there is no action being taken on this matter at this time.
I am glad to hear that Chief Chesley is working with the AG's office, that's fantastic. I think that there is a lot of positive and good things he can share with them. Thank you."

63.     The Attorney General responded:

Dear Mr. Baker:
Thank you for contacting the office of the Nevada Attorney General regarding your complaint.

Since your communication with our office, your complaint was forwarded and reviewed by our investigative unit. We conducted a preliminary investigation but found no evidence

11

of any criminal violation. As such, we believe that this matter has been addressed at the appropriate levels within the law enforcement system.

Accordingly, we have closed our investigation concerning your matter, and no criminal prosecution will be pursued. If you become aware of direct evidence of criminal violations, please submit the information to our office for additional review and consideration.

Our office acts as legal counsel for state agencies and therefore cannot act as a private attorney to individual citizens. This includes giving legal advice opinions or interpretation of law to individuals.

Once again thanks for contacting the office of Attorney General. I hope you'll find the above referenced information helpful.

Sincerely,
**Aaron Ford**
Nevada Attorney General.

64. The letter from the Attorney General illustrates clearly that the City Manager was not truthful in his address to the City Council, because the City Manager was directly addressed as the complainant in this matter by the Attorney General.

65. Upon information and belief, Barbara Ellestad has stated that she received the information used in the article in the Mesquite Citizens' Journal, directly from the aforementioned Mesquite City Manager, and that she has stated she was wrong for believing what was stated by the City Manager.

66. Ms. Ellestad knowingly published false and clearly injurious statements in her publication.

67. Ms. Ellestad shut down her publication on May 13, 2021.

68. The Mesquite City Manager resigned on May 12, 2021.

69. The City Manager notified a City Prosecutor of the allegations against MaQuade.

70. The Las Vegas Metropolitan Police Department (LVMPD) referred said City Prosecutor

12

to the Clark County District Attorney who referred said City Prosecutor to the Nevada Attorney General.

71.     These false allegations have ruined MaQuade's reputation with LVMPD, Sheriff Lombardo, as well as the Clark County District Attorney's Office.

72.     LVMPD has ceased communications with MaQuade since the salacious and blatantly false allegations of a sexual nature were made known to the LVMPD.

73.     On June 28, 2021 Sheriff Lombardo announced his candidacy for governor of the state of Nevada.

74.     All Clark County Chiefs of police were invited to a get together to celebrate the announcement, but, MaQuade Chesley was not invited.

75.     Plaintiff suffered further damages as set forth in this Complaint.

## FIRST CAUSE OF ACTION
### (Discrimination Based on Sex and Religion in violation of State and Federal Statutes) Against Defendant City of Mesquite

76.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

77.     Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex, including harassment of a sexual nature.

78.     Plaintiff is a member of a class or persons protected by state and federal statutes prohibiting discrimination based on his religion.

79.     Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq. and Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff and all employees a workplace free of unlawful discrimination.

80.     Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff to disparate terms of employment based upon religion and sex.

13

81.     Plaintiff was continually subjected to discrimination and complained of that discrimination to the City Manager.

82.     The City Attorney continuously spread false and extremely injurious rumors about MaQuade which caused extreme harm to his family as well as his career.

83.     Defendant did not remedy the discrimination.

84.     Defendant allowed the discrimination to continue.

85.     Defendant became complicit in the discriminatory activity and thereby endorsed the hideous and unlawful behavior of the City Attorney of Mesquite.

86.     Defendant allowed the individuals committing the discrimination to show open hostility after the discrimination was complained about on numerous occasions.

87.     Defendant discriminated against MaQuade Chesley when Defendant retained as employees, employees, including the City Attorney, who continued to subject Plaintiff to discrimination in the workplace throughout the entirety of his term of employment with the City of Mesquite.

88.     No other similarly situated persons, not of MaQuade's protected class, were subject to the same or substantially similar treatment.

89.     Plaintiff suffered adverse economic impact including but not limited to Plaintiff being forced to maintain a separate household for his wife and three daughters forty (40) miles away from the town of Mesquite.

90.     Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against him.

91.     Plaintiff is under the care of a medical professional to deal with the extreme sexual and religious harassment.

92.     Plaintiff suffered and continues to suffer compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful

14

discrimination endorsed and sanctioned by his employer.

93.     Plaintiff suffered actual physical harm manifested in medical irregularities due to the intense mental anguish which was a direct result of the dilatory behavior of Defendant Employer.

94.     Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this discrimination.

95.     Pursuant to 1991 Amendments to title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious, intentional repeated violations of federal and state civil rights laws. Discrimination based on race, national origin, and color has been illegal since 1964 and an employer of the size, reputation and experience of Defendant should have not engaged in this blatant discrimination.

96.     Plaintiff suffered damages in an amount to be deemed sufficient by the jury.

97.     Plaintiff is entitled to an award of reasonable attorney's fees.

98.     Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of his sex and religion or a combination thereof.

99.     Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

### SECOND CAUSE OF ACTION
**(Retaliation based upon Sex and Religion under Federal Law, 42 U.S.C. § 2000e-3 and Nevada State Law, NRS 613.340)**
**Against Defendant City of Mesquite**

100.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

101.    In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

102.    The City Attorney was informed about MaQuade's continued complaints regarding the

City Attorney's horrific behavior which resulted in the behavior intensifying in severity.

103.    Plaintiff filed an EEOC Charge in March of 2021 and submitted a settlement demand letter as well in March of 2021.

104.    In violation of NRS 613.340 Defendant, the City of Mesquite, retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory in a written charge to the EEOC.

105.    The behavior complained of also constitutes retaliatory harassment and the creation of an illegally hostile environment.

106.    There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff in his workplace.

107.    The aforementioned actions and conduct by Defendant constitutes illegal retaliation which is prohibited by federal and state statutes.

108.    Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and he is entitled to be fully compensated therefor.

109.    Plaintiff had to engage in the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

## THIRD CAUSE OF ACTION
### (42 U.S. Code § 1983 - Civil action for deprivation of rights)
### Against the following Defendants:
### Aaron Baker
### City of Mesquite

110.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

111.    The City of Mesquite is a government run division of the State of Nevada which subjected Plaintiff to the above described indignities and damages under color of state law.

112.    That Defendant's conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

113.    That beginning at a time on or about February of 2019, Defendants combined, conspired,

16

confederated, and agreed together and with each other to knowingly and willfully engage in the following acts, among others to cause harm to Plaintiff because of his race.

    a.    To violate Plaintiff's civil rights;

    b.    Defendants were acting under color of state law.

114.    At all times material and relevant herein, Defendant, was acting within the scope of his authority as an agent of the City of Mesquite.

115.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff experienced damages and is entitled to compensation for his pain and suffering, lost earnings, medical expenses, and other related costs including, but not limited to, attorney fees and costs.

116.    The conduct of the Defendants, and each of them mentioned herein, individually and in concert with one another as herein alleged was willful, intentional, oppressive, fraudulent, malicious and done in a wanton and reckless disregard of Plaintiff's rights and thereby warrant the imposition of punitive damages as to the Defendants in their individual capacity.

117.    Plaintiff had to engage the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

118.    Plaintiff suffered damages, due to the violation of 42 U.S. Code § 1983 in an amount to be deemed sufficient by the jury.

119.    Defendants are guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff.

120.    Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendants in an amount deemed sufficient by the jury.

121.    That Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed

sufficient by the jury.

122.     Plaintiff had to engage in the services of attorneys for representation in this matter and is entitled to an award of reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
### (Defamation)
### Against all Defendants

123.     Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

124.     1.) Defendant made a false and defamatory statement concerning plaintiff; 2.) An unpriviliged publication of this statement was made to a third person; 3.) Defendant was at least negligent in making the statement; and 4.) Plaintiff sustained actual of presumed damages as a result of the statement. *Pagasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 57 P.3d 82 (2002). *See Simpson v. Mars Inc.,* 113 Nev. 188, 929 P.2d 966 (1997); *Chowdry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459 (1993).

125.     The statements published were blatantly and plainly false.

126.     The City Attorney, who was the source of the rumors of a sexual nature, is known to have made numerous accusations on a regular basis which are patently false.

127.     The investigation was conducted without any foundation whatsoever to support the veracity and/or good faith thereto.

128.     The investigation had the net result of spreading rumor and innuendo and destroying the reputation of the esteemed Chief of Police MaQuade Chesley.

129.     MaQuade has aspirations of moving to a large city to become the Chief of Police therein, but, given the publications that have been made by all Defendants herein, that will likely never occur.

130.     Plaintiff is entitled to an award of reasonable attorney's fees.

///

18

## FIFTH CAUSE OF ACTION
### (Intentional/Negligent Infliction of Emotional Distress)
### Against all Defendants

131.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

132.    Defendants' conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

133.    Defendants' conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

134.    Defendants had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

135.    Defendants breached that duty.

136.    Defendants intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

137.    Plaintiff has been seriously harmed, economically and emotionally by this unlawful retaliation and he is entitled to be fully compensated therefor.

138.    Plaintiff is entitled to an award of reasonable attorney's fees.

**WHEREFORE**, Plaintiff prays for relief against Defendants, each of them, as follows:

### ON ALL CAUSES OF ACTION

1.    For compensatory damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

2.    For punitive damages in the principal amount in excess of seventy-five thousand dollars ($75,000.00) to be proven at trial;

3.    For special damages in the principal amount in excess of seventy-five thousand dollars, ($75,000.00) to be proven at trial;

4.    For attorney's fees and costs incurred;

19

5.      For all damages in an amount to be proved at trial;

6.      For costs of suit herein incurred;

7.      For reasonable interest on amounts due; and

8.      For any such other and further relief as this Court deems just and proper.

DATED this 21st day of October, 2021.

                                      **MULLINS & TRENCHAK, ATTORNEYS AT LAW**


                                      _____
                                      Philip J. Trenchak, Esq.
                                      Nevada Bar No. 009924
                                      Mullins & Trenchak, Attorneys at Law
                                      1614 S. Maryland Parkway
                                      Las Vegas, NV 89104

## PLAINTIFF'S JURY DEMAND

Plaintiff, MAQUADE CHESLEY by and through his attorneys of record, PHILIP J. TRENCHAK, ESQ. and VICTORIA MULLINS, ESQ. of the law firm MULLINS & TRENCHAK, ATTORNEYS AT LAW, respectfully submits this Demand for Jury pursuant FRCP 38 in the above captioned matter.

DATED this 21st day of October 2021.

**MULLINS & TRENCHAK, ATTORNEYS AT LAW**

PHILIP J. TRENCHAK, ESQ.
Nevada State Bar No. 009924
VICTORIA C. MULLINS, ESQ.
Nevada State Bar No. 13546
1614 S. Maryland Parkway
Las Vegas, Nevada 89104
P: (702) 778-9444
F: (702) 778-9449
E: phil@mullinstrenchak.com
E: victoria@mullinstrenchak.com
Attorneys for Plaintiff

# <u>Exhibit A</u>

Right to Sue Notice
Mailed on July 23, 2021

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Maquade Chesley**<br>**517 West Mesquite Blvd #1323**<br>**Mesquite, NV 89027** | From: | **Las Vegas Local Office**<br>**333 Las Vegas Blvd South**<br>**Suite 5560**<br>**Las Vegas, NV 89101** |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| **487-2021-00924** | **Brian Gorecki,**<br>**Intake Supervisor** | | **(702) 553-4465** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission, For

Brian Gorecki

Digitally signed by Brian Gorecki
Date: 2021.07.23 08:42:11 -07'00'

Enclosures(s)

**Michael L. Mendoza,**
**Local Office Director**

*(Date Issued)*

cc:   **Human Resources**
      **CITY OF MESQUITE**
      **10 E Mesquite Blvd**
      **Mesquite, NV 89027**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be
made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | | |
|---|---|---|
| Joseph Maquade Chesley | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| City of Mesquite, a government entity, Aaron Baker, an individual, Barbara Ellestad, an individual | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  City Of Mesquite
10 E. Mesquite Blvd.
Mesquite, NV 89027

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Philip J. Trenchak, Esq.
1614 S. Maryland Pkwy.
Las Vegas, NV 89104

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    10/21/2021

_____
*Signature of Clerk or Deputy Clerk*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Joseph Maquade Chesley | City Of Mesquite, a government entity, Aaron Baker, an individual, Barbara Ellestad, an individual |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Philip J. Trenchak, Esq.
1614 S. Maryland Pkwy. Las Vegas, NV 89104
(702) 778-9444

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 2000(e)-17, 42 U.S.C. 1983
Brief description of cause:
Discrimination based on religion and sex, retaliation due to religion and sex, defamation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
10/21/2021

SIGNATURE OF ATTORNEY OF RECORD
**Philip J. Trenchak, Esq.**

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____