UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| JOSEPH MCQUADE CHESLEY, an individual, | Case No. 2:21-cv-01946-ART-DJA |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| CITY OF MESQUITE, a governmental entity, AARON BAKER, an individual, DOE INDIVIDUALS 1 through 300; and ROE BUSINESS OR GOVERNMENTAL ENTITITES 1 through 300, inclusive, | |
| Defendants. | |

### I. SUMMARY

Before the Court is Defendants City of Mesquite and Aaron Baker's (collectively, "Defendants") Motion to Dismiss Plaintiff Joseph McQuade Chesley's ("Chesley") Second Amended Complaint. (ECF No. 55). For the reasons discussed herein, the court dismisses Chesley's federal claims with prejudice, and declines to exercise supplemental jurisdiction over Chesley's state law claims. As this Court lacks federal question jurisdiction in the absence of a viable federal claim, the Court also denies Chesley's discovery-related motions without prejudice. (ECF Nos. 82, 85, 90).

### II. BACKGROUND

This action arose after rumors began spreading in Mesquite that Chesley had inappropriate sexual relations with multiple women, both of age and underage, embezzled money from a local business, and improperly approved police overtime. (ECF No. 53 at 5:4-11). Chesley sued his employer, the City of Mesquite, and the former City Manager of Mesquite, Aaron Baker ("Baker"), for failing to take action to stop the rumors from spreading.

Chesley was hired by the City of Mesquite in 2007. (*Id.* at 3:27-28). In 2019, Chesley was promoted to Chief of Police for the township of Mesquite. (*Id.* at 4:1-2).

In February 2019, Mesquite City Attorney Bob Sweetin ("Sweetin") sent text messages to police officers under Chesley's command at Chesley's swearing in ceremony. (*Id.* at 4:13-16). The text messages read: "Kiss ass (kiss emoji peach emoji)" and "Were you guys threatened with your jobs? I don't think I've ever seen a turnout like this for an appointment (lol emoji lol emoji)." (*Id.*)

Though the briefing does not make the exact timeline clear, at some point Sweetin and or Baker allegedly made several statements to city employees, Mesquite citizens, and members of Chesley's church that Sweetin also attended. The statements included allegations that Chesley had an affair with an underage woman; sent and received nude photos with an underage woman; performed sex acts with an underage woman in the stock room of a business named "Splash Pad"; impregnated an adult woman; stole money from "Splash Pad"; and improperly approved between $40,000 and $50,000 in police overtime to compensate a police officer for creating campaign videos for the Mayor of Mesquite. (ECF No. 53 at 4:27-5:13; 36:12-27). Chesley denies these allegations and argues that Sweetin and Baker knew they were false. (*Id.* at 5:11-13). Chesley argues that Sweetin made these statements "for personal reasons related to his own mental illness or for vindictive and private reasons that are personal to Bob Sweetin, and not for any public interest." (*Id.* at 15:24 fn. 3).

In response to the allegations against Chesley, Chesley's wife and three daughters moved forty miles away. (*Id.* at 7:1-2). Chesley also felt he could no longer attend his place of worship as his reputation there was "destroyed." (*Id.* at 7:6).

In September 2019, Chesley and Baker met to discuss the allegations against Chesley. (*Id.* at 6:15-16). Chesley understood that Baker believed the accusations

against him and "asked uncomfortable questions without regard to giving Chesley notice. . . ." (ECF No. 53 at 6:17-18). Chesley asked Baker to stop Sweetin from repeating the allegations, but Baker refused. (*Id.* at 7:15-16).

Also in September 2019, Chesley made a complaint with Mesquite's human resources department. (*Id.* at 19:9-11).

Chesley subsequently asked Baker for help squashing the allegations against him later in 2019 and 2020, but Baker continued to refuse. (*Id.* at 8:19-21). Chesley asked Baker to inform the City Council of the situation, but Baker allegedly refused to do so. (*Id.* at 16-18).

On October 8, 2020, Sweetin allegedly relayed the allegation that Chesley had sexual relations with underage girls in the "Splash Pad" stockroom to Mesquite Constable Dwayne Thurston at the Mesquite Justice Facility. (ECF No. 53 at 25:11-12).

In November 2020, the City of Mesquite hired an outside law firm to investigate claims against Chesley. (*Id.* at 9:10-11).

On December 8, 2020, following an election that changed the composition of Mesquite's City Council and Mayoralty, the Council voted to fire Sweetin. (*Id.* at 9:11-12; 15:19).

In March 2021, Chesley filed an EEOC Charge. (*Id.* at 9:21-22). Chesley subsequently amended his EEOC Charge on July 12, 2021. (*Id.* at 72).

On April 27, 2021, Baker wrote an email to Chesley explaining that a local journalist, Barbara Ellestad ("Ellestad"), was writing an article about Chesley allegedly being investigated by the Nevada Attorney General's Office. (ECF No. 53 at 9:23-28). Baker explained that "the allegations stem from things that allegedly happened between 2015 and 2019 involving minor females." (*Id.* at 9:26). Baker reported that "an individual came forward alleging that they had firsthand knowledge of these incidents involving you." (*Id.* at 9:27-28). Baker wrote that he "directed this person to the AG's Office." (*Id.* at 10:1-2).

The same day, Ellestad published an article in the Mesquite Citizens' Journal alleging that "multiple sources" were interviewed by the Nevada State Attorney General's Office in connection with the allegations against Chesley. (*Id.* at 10:26-27). Ellestad claimed that she was "aware of at least seven then-teenage girls who were either involved with or knew of Chesley's alleged behavior" exchanging sexually explicit text messages with underage girls using Snapchat. (*Id.* at 11:19-20). Baker was quoted in Ellestad's article as saying that "[w]e have had an individual make claims regarding an employee. . . . Due to a conflict, the city cannot investigate those matters. People who've made claims have been referred to the AG's Office for the AG to look into the matter." (ECF No. 53 at 11:8-11). Chesley denied any "inappropriate text messages to underage girls. . . ." (*Id.* at 11:17-18).

Also on April 27, 2021, the Mesquite City Council held a meeting at which Baker addressed Ellestad's article. (*Id.* at 12:17-13:3). Baker alleged that several weeks prior to the meeting an individual approached him and Mesquite's new City Attorney, Adam Anderson, claiming firsthand knowledge of Chesley's alleged inappropriate behavior. (*Id.* at 12:21-23). Baker claimed that he directed that individual to the Nevada Attorney General's Office. (*Id.* at 12:24-25). Baker further explained that Chesley was "working with the AG's Office." (*Id.* at 13:2). In his Second Amended Complaint, Chesley denies ever working with the Nevada Attorney General's Office. (*Id.* at 42:6).

On May 6, 2021, Chesley emailed Chief William Scott ("Scott") at the Nevada Attorney General's Office inquiring about the existence of an investigation into the allegations against him. (ECF No. 53 at 14:3). The same day, Scott and Chesley spoke via telephone. Scott allegedly told Chesley that Baker made a complaint regarding the allegations to the Nevada Attorney General's Office. (*Id.* at 14:9).

On May 12, 2021, Baker resigned as City Manager. (ECF No. 53 at 16:7).

On May 13, 2021, the Mesquite Citizens' Journal ceased operations. (*Id.* at 16:8).

On May 18, 2021, the Nevada Attorney General's Office sent Baker a letter stating "[t]hank you for contacting the Office of the Nevada Attorney General regarding your complaint." The letter explained that the Nevada Attorney General's Office had reviewed the complaint, conducted a preliminary investigation, "found no evidence of any criminal violation" and closed the complaint. (ECF No. 53 at 13:4-21).

Chesley alleges that Baker "improperly used the AG's Office to make knowingly false statements in a complaint to the AG . . . ." (*Id.* at 15:5-6).

On October 21, 2021, Chesley filed this suit against the City of Mesquite, Aaron Baker, and Barbara Ellestad. (ECF No. 1).

On February 7, 2022, Chesley and Ellestad settled and Ellestad was dismissed from the suit. (ECF No. 34, 35).

On December 15, 2022, this Court held oral argument. (ECF No. 52). The Court granted-in-part and denied-in-part Defendants' Motion to Dismiss and granted leave to amend. (*Id.*)

On January 31, 2023, Chesley filed his Second Amended Complaint ("SAC"). (ECF No. 53).

On February 14, 2023, Defendants filed their Motion to Dismiss. (ECF No. 55).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a short and plain statement of the claim demonstrating that the pleading party is entitled

to relief to give the defendant notice of the claim and its factual support. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint must set forth more than a formulaic recitation of the elements to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Iqbal*, 556 U.S. at 663. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**IV. DISCUSSION**

Chesley's First Amended Complaint includes five claims: 1) a hostile work environment based on sexual harassment arising under Title VII of the Civil Rights Act of 1964 ("Title VII"); 2) retaliation arising under 42 U.S.C. § 2000e; 3) a Free Exercise violation brought via 42 U.S.C. § 1983; 4) Defamation; and 5) intentional and negligent infliction of emotional distress ("IIED" and "NIED").

Chesley does not plead that any of the actions by Defendants were *because of* his sex or gender. Because he does not adequately plead this critical causal element, Chesley's first two claims must fail. Further, Chesley does not plead actions amounting to a substantial burden on his exercise of religion, so his § 1983 claim fails as well. As Chesley's federal claims fail, the Court dismisses his state law claims without prejudice for lack of jurisdiction.

**A. Sexual Harassment – Hostile Work Environment**

Title VII and its Nevada state counterpart, NRS 613.330 prohibit sex discrimination in employment. *See* 42 U.S.C. § 2000e *et seq.*; NRS 613.330. Claims for unlawful discrimination under NRS 613.330 are analyzed under the same principles applied to Title VII claims. *See Samuels v. We've Only Just Begun Wedding Chapel, Inc.,* 154 F. Supp. 3d 1087, 1093 (D. Nev. 2015) (citing *Apeceche v. While Pine Co.,* 615 P.2d 975, 977-78 (Nev. 1980)).

"To establish sex discrimination under a hostile work environment theory, a plaintiff must show she was subjected to sex-based harassment that was sufficiently severe or pervasive to alter the conditions of employment, and that her employer is liable for this hostile work environment." *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (citing *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2001)). Essential to this analysis is that the harassment must be related to the sex of the plaintiff, or "because of … sex." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff bringing a hostile work environment claim must show discrimination by an employer on account of membership in a protected group under 42 U.S.C. § 2000e-2(a)(1)." *Sharp v. S&S Activewear, L.L.C.,* 69 F.4th 974, 978 (9th Cir. 2023)

Chesley argues that he was subjected to sexual harassment when City Attorney Bob Sweetin allegedly told members of Mesquite's city government and community writ large that Chesley performed sex acts on and sent illicit nude photos to at least one underage woman, stole money from a local business, and improperly approved police overtime. (ECF No. 53 at 18:28-19:4). Chesley alleges that the City of Mesquite was complicit in Sweetin's disclosure of these allegations because Mesquite's City Manager, Aaron Baker, did nothing to stop Sweetin and allegedly made a complaint to the Nevada Attorney General that repeated some or all of the rumors against Chesley. (ECF No. 53 at 15:5-6, 18:17-23).

Chesley's claim of sexual harassment predicated on a hostile work

7

environment fails because he does not offer any argument that links the alleged harassment he experienced with his male sex; Chesley nowhere argues that his sex was a but-for cause of the alleged harassment. Rather, Chesley argues that he experienced sexual harassment because the allegations against him involved sex acts by Chesley himself, allegations which Chesley emphatically maintains are false. (*See, e.g.*, ECF No. 53 at 17 fn.4 ("Plaintiff asserts that the harassment of a sexual nature involving false allegations that Plaintiff participated in sex acts with underaged females, and worse, does constitute sexual harassment. . . .")) Chesley does not argue that these allegations were spread *because* he is a man, or that the allegations "created a work environment abusive to employees *because of* their . . . gender . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (emphasis added).

Instead, Chesley is the *subject* of allegations that he, among other things, engaged in sexual relations with an underage girl. (ECF No. 53 at 5:4-11). He therefore "does not fall within the zone of protection contemplated by Title VII. . ." because he is the alleged perpetrator of the wrongful conduct, not a victim of the conduct itself. *Burke v. Soto*, 2017 WL 4811832, at *4 (E.D. Cal. Oct. 24, 2017). The tort of defamation, rather than Title VII, is the proper vehicle to consider Chesley's arguments that he was harmed by the allegations against him.

Furthermore, courts generally find that ostracism by co-workers in response to rumors involving sex (rather than ostracism in response to rumors that are *based on* the subject's sex, gender, or sexual orientation) is not actionable under Title VII's sexual harassment or retaliation provisions. *See, e.g.*, *Manatt v. Bank of Am., NA*, 339 F.3d 792, 803 (9th Cir. 2003) ("Mere ostracism in the workplace is not grounds for a retaliation claim. . . ."); *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action."); *Clarkson v. SEPTA*, 700 F. App'x 111,

1  115 (3d Cir. 2017) ("[T]he sporadic threats of termination, workplace gossip, and
2  disparaging comments, do not rise to the level of a materially adverse employment
3  action. The antiretaliation provisions do 'not set forth a general civility code for
4  the American workplace.'" (quoting *Burlington Northern and Santa Fe Ry. Co. v.*
5  *White*, 548 U.S. 53, 68 (2006))); *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp.
6  3d 100, 121 (D.D.C. 2015) ("[A]llegations of workplace criticisms, gossip,
7  rudeness, and subjective changes in perception are simply insufficient to
8  establish an objectively hostile work environment under Title VII. . . .")

9  Therefore, the Court holds that Defendants' Motion to Dismiss is granted as
10 to Chesley's first sexual harassment claim. (ECF No. 53 at 17). As the Court has
11 previously granted leave to amend and believes further amendment would be
12 futile, dismissal of these claims is with prejudice.

13 **B. Retaliation**

14 Title VII's anti-retaliation provision, set forth in 42 U.S.C. § 2000e–3(a),
15 prohibits an employer from discriminating against any employee because the
16 employee has made a charge against it. *Id.* To state a claim for retaliation, a
17 plaintiff must allege he (1) engaged in a protected activity, (2) his employer
18 subjected him to a materially adverse employment action, and (3) a causal link
19 exists between the protected activity and the adverse action. *Westendorf v. W.*
20 *Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (citations
21 omitted).

22 Here, Chesley engaged in protected activity when he filed his EEOC Charge in
23 March 2021. (ECF No. 53 at 28:24); *see Raad v. Fairbanks N. Star Borough Sch.*
24 *Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). But, Chesley has not pled an adverse
25 employment action within the meaning of Title VII and his retaliation claim must
26 therefore fail.

27 "[A]n adverse employment action is one that materially affects the
28 compensation, terms, conditions, or privileges of employment." *Davis v. Team*

1  *Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)

Chesley admits that "there has been no tangible personnel action taken by the City of Mesquite" against him. (ECF No. 56 at 9:6-7). Nonetheless, he argues that he experienced an adverse employment action when: 1) Baker "refused to take any action against Bob Sweetin, the City Attorney" (ECF No. 53 at 23:14-16); 2) Baker allegedly filed a complaint with the Nevada Attorney General's Office detailing the allegations against Chesley; and 3) Baker referenced that complaint at a Mesquite City Council meeting and in a quote in his official capacity to Ellestad. (*Id.* at 25:21-25, 28:24-29:2). None qualify as adverse employment actions.

Baker's refusal to investigate Sweetin's conduct or "take any action" against him is not an adverse employment action in this context. Courts generally refuse to consider a failure to investigate an adverse employment action. *See Brown v. Dep't of Pub. Safety,* 446 F. App'x 70, 72-73 (9th Cir. 2011) (finding a failure to investigate was not an adverse employment action where there was no evidence the failure to investigate was connected with racial discrimination); *Kurdi v. California Dep't of Transportation,* 2023 WL 267538 at *8-9 (E.D. Cal. Jan. 18, 2023) ("The failure to investigate generally does not amount to an adverse action."); *Huddleston v. City & Cnty. of San Francisco*, 2016 WL 4729175, at *4 (N.D. Cal. Sept. 12, 2016) ("[P]laintiff's allegations that defendants failed to investigate her complaints are insufficient to raise an inference that defendants' failure to act was motivated by discriminatory or retaliatory intent."); *McAllister v. Adecco USA Inc.,* 2018 WL 6112956, at *8 (D. Haw. Nov. 21, 2018), *aff'd sub nom. McAllister v. Brunk,* 812 F. App'x 708 (9th Cir. 2020) (failure to investigate is not an adverse employment action); *McKissick v. City of Reno*, 2019 WL 3241161, at *12 (D. Nev. July 18, 2019) ("[A]ccepting Plaintiffs' reliance on the handling of the investigations to establish adverse employment action would erode the policy reason for encouraging employers to investigate complaints for

fear that an investigation would lead to a claim of retaliation based on an inadequate investigation.") Chesley fails to either plead any facts that suggest the reason Baker refused to "take any action" against Sweetin was related to Chesley's sex or religious beliefs, or that indicate Baker's refusal to investigate "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. For all these reasons, the Court finds that Baker's refusal to investigate Sweetin or "take any action" against him is not an adverse employment action.

The Court likewise finds that Baker's alleged filing of a complaint with the Nevada Attorney General's Office detailing the allegations against Chesley is not an adverse employment action. Baker's alleged filing of the complaint is not an adverse employment action because filing a complaint with a government entity regarding allegations of sexual harassment or assault by a city employee is itself a protected activity. To hold that another employee's filing of a complaint regarding a plaintiff's alleged sexual relations with underage girls constitutes an adverse employment action would have a severe chilling effect on the reporting of sexual assault and harassment allegations to government authorities—exactly the outcome Title VII is designed to avoid.

Finally, the Court finds that Baker's referencing of the complaint at a Mesquite City Council meeting and in a quote to Ellestad are not adverse employment actions. In both instances, Baker confirmed the existence of a complaint made to the City, noted that a conflict made it inappropriate for the City to investigate the complaint, and explained that the complainant had been referred to the Nevada Attorney General's Office. (ECF No. 53 at 11:8-10). Baker did not mention Chesley by name in his quote to Ellestad and explained that "nothing has been substantiated at this point" in his statement to Mesquite's City Council. (ECF No. 54 at 11:8-10, 13:1). Both statements stemmed from the complainant's—allegedly Baker's—protected activity: reporting allegations that a city employee

11

had sexual relations with underage girls. Neither statement contained an assertion that the allegations were true. As such, neither statement is an adverse employment action within the meaning of Title VII.

As Chesley has not pled an adverse employment action within the meaning of Title VII, he fails to make a prima facie case of retaliation. Therefore, the Court grants Defendants' Motion to Dismiss as to Chesley's retaliation claim. (ECF No. 55). As the Court has previously granted leave to amend and believes further amendment would be futile, dismissal of these claims is with prejudice.

**C. 42 U.S.C. § 1983**

Next, Chesley brings a Free Exercise Claim under 42 U.S.C. § 1983 alleging a deprivation of "his First Amendment Right to practice his religion at his chosen place of worship." (ECF No. 53 at 31:13-15). Chesley additionally argues that he was "deprived of residing with his family. . . " when his wife and children moved forty miles away in response to the allegations against Chesley. (*Id.* at 31:16).

The Free Exercise Clause provides that "Congress shall make no law … prohibiting the free exercise" of religion. Amdt. 1. The Clause is applicable to the States under the terms of the Fourteenth Amendment. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). "The Clause protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Id.* (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)). Government action may violate the Free Exercise Clause if it expresses hostility towards religion or burdens a plaintiff's "sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 2422, 2422 n.1 (citations omitted).

Here, however, Chesley does not challenge a specific government law,

regulation, ordinance, policy, or practice. He instead challenges the alleged speech and inaction of other government officials, which he claims violated his First Amendment rights under the Free Exercise Clause because the alleged statements and inaction "destroyed" his reputation at his place of worship, and "affected [Chesley's] ability to participate in worship at his church." (ECF No. 53 at 7:6, 17:21-22). Under circumstances such as these, where "the government action is neither regulatory, proscriptive, or compulsory" the question is whether the challenged government action "substantially burdens a religious practice and either is not justified by a substantial state interest or is not narrowly tailored to achieve that interest." *Am. Family Ass'n, Inc. v. City & Cty. of San Francisco*, 227 F.3d 1114, 1123-24 (9th Cir. 2002); *see also Kennedy*, 142 S. Ct. at 2421-2422 (noting that a plaintiff may carry his burden of proving a free exercise violation by showing that a government entity has burdened his sincere religious practice).

Chesley has not pled any substantial burdening of his Free Exercise Rights. The harms he alleges—a "destroyed" reputation at his church, and consummate discomfort worshipping there—are subjective, and the Ninth Circuit is clear that "a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden." *Am. Family*, 227 F.3d at 1124.

*Vernon v. City of Los Angeles* is instructive. 27 F.3d 1385 (9th Cir. 1994). There, Vernon alleged that a government investigation into the alleged effects of his personal beliefs on his on-duty performance had "chilled [him] in the exercise of his religious beliefs, fearing that he can no longer worship as he chooses" and "interfered with his freedom to worship in the way he wants without repercussions." *Id.* at 1394-95. The Ninth Circuit nonetheless found that Vernon's allegations amounted only to a "subjective chilling effect[] with neither 'a claim of specific present objective harm [n]or a threat of specific future harm." *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 14 (1972)). "Such chilling effects are simply not objectively discernable and are therefore not constitutionally

cognizable." *Id.*

Here, the chilling effect Chesley alleges is similarly subjective and does not rise to a substantial burden on Chesley's exercise of religion. Chesley remains free to worship at his preferred church should he choose but prefers not to because he feels his reputation has been sullied by the accusations against him. Chesley's own allegations confirm that any harms felt are not the direct result of government action but are a result of Chesley's desire to avoid discomfort. The "chilling effect" is therefore entirely subjective, and, as a result Chesley has not shown the substantial burden necessary to state a claim here.

Turning to Chesley's allegation that he was deprived of a constitutional right when his wife and daughters moved forty miles away, the Court notes that the Supreme Court has held there is a constitutional right for families to live together without governmental interference. *See, e.g.*, *Santosky v. Kramer*, 455 U.S 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). This right "guarantee[s] that parents and children will not be separated by the state without due process of law except in an emergency." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). Here, however, Chesley's claim fails because it was his wife's decision, not the government's, to separate his family and move away from Mesquite.

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment as to Chesley's § 1983 claims. (ECF No. 55). As the Court has previously granted leave to amend and believes further amendment would be futile, dismissal of these claims is with prejudice.

**D. State Law Claims**

Chesley also brings state law defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress claims against all Defendants. (ECF No. 53 at 32, 44). Because the Court finds that Chesley's federal claims fail, it declines to exercise supplemental jurisdiction over Chesley's state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Religious Tech. Ctr. v.*

1  *Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) ("when federal claims are
2  dismissed before trial … pendent state claims should also be dismissed.");
3  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010); *Scott v.*
4  *Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

Therefore, the Court grants Defendants' Motion to Dismiss as to Chesley's state law claims. (ECF No. 55). Chesley's defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress claims are dismissed without prejudice as the court declines to exercise supplemental jurisdiction over the remaining state law claims.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' Motion to Dismiss (ECF No. 55) is granted. Because the Court has previously granted opportunity for leave to amend and believes further amendment would be futile, the Court dismisses Chesley's federal claims with prejudice.

It is further ordered that Chesley's state law claims for defamation and intentional and negligent infliction of emotional distress are dismissed without prejudice as the Court declines to exercise supplemental jurisdiction over those claims in the absence of a cognizable federal claim.

It is further ordered that Defendants' Objection (ECF No. 82) and Magistrate Judge Albregts' Discovery Order (ECF No. 79) are denied without prejudice as moot as there is no remaining claim over which this Court is exercising its jurisdiction. In the interest of comity, the remaining issues in this case—including discovery-related disputes surrounding the Littler Mendelson report—are for the state court to decide if Chesley renews this action.

For the same reason, it is further ordered that Chesley's Motions to Compel (ECF Nos. 85, 90) are also denied without prejudice as moot.

The Clerk of Court is respectfully directed to close this case.

It is so ordered.

DATED THIS 14th day of August 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE